UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DENISE SWINNEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 08 C 0994 |
| | ) | |
| CITY OF WAUKEGAN, a Municipal Corporation, and OFFICER HAYNES, #704, | ) ) ) | Judge Joan B. Gottschall |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION & ORDER**

Plaintiff Denise Swinney filed a complaint against Waukegan Police Officer Delatwan Haynes and the City of Waukegan ("the City"), alleging that Haynes detained and searched Swinney without probable cause, forced her to perform various sexual acts (including intercourse), threatened her, and then released her. She brought eight counts in total: four against Haynes, and four against the City. Counts I, II, VII, and VIII are directed toward Haynes and allege assault and battery, violations of Swinney's constitutional rights under 42 U.S.C. § 1983, false imprisonment, and intentional infliction of emotional distress, respectively. Counts III-VI are directed against the City and allege negligence in hiring and failure to train, liability under the doctrine of respondeat superior, constitutional violations under 42 U.S.C. § 1983, and violations of Article I, Section 6 of the Illinois Constitution ("Searches, Seizures, Privacy and Interceptions"), respectively. The City has now moved for summary judgment. For the reasons set forth below, the motion is granted and all claims against the City are dismissed.

# I. BACKGROUND[1]

In January 2008, the City's police officers were trained in compliance with state standards; they were also trained in and required to know both the Waukegan Police Department Rules and Regulations and the Waukegan Civil Service Commission Rules. New officers also were required to attend 400 hours of basic law enforcement training through the Illinois State Police Academy, the Police Training Institute, or the Chicago Police Academy. Upon completion of that basic training, officers would complete a field training program, followed by a "shadow phase" program. In addition, officers continued to receive additional training throughout their employment.

Officer Haynes was employed with the City's Police Department from January 2001 until January 2008. Prior to his employment with the City, he had worked for about six months as a police officer in Texas. He received his initial training at the Illinois State Police Academy, and received additional in-house training with the Waukegan Police Department. This training required him to become familiar with both the Waukegan Police Department Rules of Conduct and the Waukegan Civil Service Commission Rules. He also received training for transportation of prisoners, for handling evidence, and for the use of force.

On January 6, 2008, Swinney claims Haynes—while on duty and in uniform—detained her in the early morning hours. He conducted a pat down search of her where he placed his hand under her coat and fondled her breasts. He then placed her in his squad car and drove her to a remote location in Waukegan where he forced her to perform oral

---

[1] On summary judgment, the court resolves disputed issues of fact in favor of the non-movant; here, however, Swinney did not respond to the City's statement of facts, nor did she file her own additional statement of facts. Thus, the City's facts are deemed admitted under Local Rule 56.1(b)(3)(C) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party.").

sex on him and engaged in non-consensual sexual intercourse with her. Haynes released Swinney without filing any charges against her, and dropped her off near her house. Swinney claims she called 911 when she returned home to report the incident. However, she did not tell the 911 dispatcher that she had been raped or identify Haynes. She officially reported the incident to the Waukegan Police Department the next day, January 7, 2008.

The Waukegan Police Department began to investigate the incident that very day. Haynes was charged with violating the Waukegan Police Department Rules of Conduct[2] and the Waukegan Civil Service Commission Rules[3]. He was placed on administrative leave on January 8, 2008 and he resigned on January 9, 2008, before the investigation was complete. Haynes also was charged criminally in connection with the incident by the Illinois State's Attorney; he was found guilty of official misconduct, but acquitted of the other criminal charges.

Swinney admits that the Waukegan Police Department listened to her and acted on her complaint, and that she was satisfied with the investigation conducted by the

---

[2] As to the Waukegan Police Department Rules of Conduct, Haynes was charged with violating Paragraph 15 ("Police personnel shall not leave their district of patrol except in (a) emergency situations, (b) where authorized by a superior officer, (c) in pursuit of assigned duties); Paragraph 25 (Police personnel shall not violate the laws of any municipality or any state of the United States"); Paragraph 27 ("Police personnel shall refrain from abusive or obscene language while in uniform or horseplay while within the department or through their normal tour of duty, or at any time while in uniform"); Paragraph 28 ("Police personnel shall not submit any report whatsoever that is false or shall tend to be misleading"); and Paragraph 31 ("Police personnel shall refrain from immoral conduct or any conduct unbecoming an officer").

[3] As to the Waukegan Civil Service Commission Rules, Haynes was charged with violating Section XIII, Paragraph 2 ("Compromising or being interested in any compromise of any criminal charge with any person, this offense being intended to include the failure to report any compromise or attempt at compromise"); Paragraph 13 ("Using any city property for private purposes"); Paragraph 15 ("Violation of any Federal, State, City law or ordinance or Fire or Police department rule, policy, or regulation"); Paragraph 20 ("Conduct unbecoming a member or prejudicial to good order"); and Paragraph 46 ("Neglect or inattention [to] duty").

Waukegan Police Department. She also admits that as a result of her complaint, Haynes lost his job, which was the outcome she desired.

As it turns out, the January 2008 incident was not the first instance of Haynes being accused of misconduct. In February 2007, Haynes arrested a woman named April Cisneroz; she later filed a complaint with the Waukegan Police Department, claiming Haynes falsely charged her with crimes because he was sexually interested in her. The Police Department immediately investigated the incident, and Haynes was found to have violated Waukegan Civil Service Commission Rule XIII, Paragraph 20 ("Conduct unbecoming a member or prejudicial to good order") and Waukegan Police Department Rules of Conduct, Paragraph 31 (requiring police personnel to "refrain from immoral conduct or any conduct unbecoming an officer"). Haynes received a one-day suspension.

Another woman, Debra Miller-Bobo, claimed that Haynes had non-consensual sexual intercourse with her in the back of his squad car in October 2002. However, she did not file a written complaint with the Waukegan Police Department until June 25, 2008, after Swinney made her complaint against Haynes. Haynes denies having sex with Miller-Bobo or acting inappropriately toward her—in fact, Haynes claims he has not had sex with anyone other than Swinney while on duty as a police officer.

Finally, apart from Haynes, the Waukegan Police Department had one other officer who was charged with sexual misconduct: Officer Mario Antillon. In June 2005, two women filed written complaints with the Police Department alleging that they were sexually assaulted by Antillon. Waukegan Police Department immediately investigated the complaints and, as a result of the investigation, Antillon's employment was terminated on June 25, 2008; he was also arrested and charged criminally.

## II. LEGAL STANDARD

Summary judgment is warranted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On summary judgment, all facts and any inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010). The court is not required to make every conceivable inference in the non-movant's favor; instead, only *reasonable* inferences must be drawn. *Smith v. Hope Sch.*, 560 F.3d 694, 699 (7th Cir. 2009).

Further, "[t]he nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts"; a mere "scintilla of evidence in support of the nonmoving party's position will be insufficient to survive a summary judgment motion." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010). Thus, once the moving party has satisfied its initial burden of "identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact," *Creditor's Comm. of Jumer's Castle Lodge, Inc. v. Jumer*, 472 F.3d 943, 946 (7th Cir. 2007) (internal quotations and citations omitted), the non-moving party must come forward with sufficient evidence to "allow a jury to render a verdict in her favor." *McPhaul v. Bd. of Comm'rs*, 226 F.3d 558, 563 (7th Cir. 2000). If a plaintiff fails to establish one of the elements of her case and there is no factual dispute regarding that element, summary judgment will be entered in favor of the defendant. *See Johnson v. ExxonMobil Corp.*, 426 F.3d 887, 892 (7th Cir. 2005).

## III. ANALYSIS

Swinney originally alleged four counts against the City: Count III (negligence in hiring and failure to train), Count IV (liability under the doctrine of respondeat superior), Count V (constitutional violations brought pursuant to 42 U.S.C. § 1983), and Count VI (violations of Article I, Section 6 of the Illinois Constitution). In her response to the City's motion, Swinney has now conceded that she cannot satisfy her burden on Counts III and VI; thus, those claims are dismissed, and only Counts IV and V remain for the court's consideration.[4]

Swinney is fighting an uphill battle on these remaining counts: she filed no response to the City's statement of facts, nor did she file her own additional statement of facts. Thus, all of City's facts have been deemed admitted under Local Rule 56.1(b)(3)(C), and Swinney has no admissible evidence on which to rely in support of her arguments. *See Benuzzi v. Bd. of Educ.*, 647 F.3d 652, 655 (7th Cir. 2011) ("District courts have broad discretion to enforce and require strict compliance with their local rules."); *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006) ("By supporting

---

[4] Swinney did not make clear in her complaint whether she was suing Haynes in his individual or official capacity. As the Seventh Circuit has explained, when a plaintiff does not clearly indicate the manner in which her claims are brought, but "seeks injunctive relief from official policies or customs," the court should construe the claim as one against the defendant in his official capacity, whereas "if the plaintiff alleges tortious conduct of an individual acting under color of state law," the defendant likely is sued in his individual capacity. *See Miller v. Smith*, 220 F.3d 491, 494 (7th Cir. 2000) (citing *Hill v. Shelander*, 924 F.2d 1370 (7th Cir. 1991) and *Kolar v. Cnty. of Sangamon*, 756 F.2d 564 (7th Cir. 1985)). Other relevant considerations are whether the complaint refers to the defendant by his official title, indicating a suit against the defendant in that capacity, or whether the plaintiff seeks punitive damages, which are only available against a defendant in his individual capacity. *See id.*

Here, the court finds that all of the claims brought against Haynes were brought against him in his individual capacity. Although Haynes is repeatedly referred to by title, none of the claims against him request equitable relief; each requests $5,000,000 in compensatory damages. In addition, Swinney only uses the "widespread-practice" *Monell* language in Count I (assault and battery); Counts II, VII, and VIII make no mention of any official policy or custom. And although Count I uses *Monell* language, there is no indication of what practice or policy Swinney intends to reference. Furthermore, Count II (the § 1983 claim) uses the "color of state law" language and seeks $2,000,000 in punitive damages. Reading the complaint as a whole, the court believes Swinney intended to sue Haynes as an individual. Thus, the court has no cause to speak to these counts, as the City has moved for summary judgment, but Haynes has not.

its motion for summary judgment with its Local Rule 56.1 statement, [the defendant] shifted the burden of production to [the plaintiff].").  Still, Swinney's failure to comply with the Local Rules does not automatically result in judgment for the City—the City retains the ultimate burden of persuasion and must show that it is entitled to judgment as a matter of law.  *Raymond*, 442 F.3d at 608 (citing *Reales v. Consol. Rail Corp.*, 84 F.3d 993, 997 (7th Cir. 1996) and *Wienco, Inc. v. Katahn Assocs., Inc.*, 965 F.2d 565, 568 (7th Cir. 1992)).  Thus, the court will analyze Swinney's remaining claims.

### A. Respondeat Superior – Count IV

Count IV alleges that the City is liable under the doctrine of respondeat superior for Haynes' willful, wanton and intentional conduct, including his excessive and unnecessary use of force.  The court is not clear as to Swinney's theory: the jurisdictional statement in her complaint only alleges federal jurisdiction under 28 U.S.C. §§ 1331 and 1343, but she obviously seeks to bring state-law tort claims against Haynes (*e.g.*, intentional infliction of emotional distress).  To the extent that Swinney alleges that the City is vicariously liable for violations of her constitutional rights under § 1983, that theory is dead in the water.  *See Perkins v. Lawson*, 312 F.3d 872, 875 (7th Cir. 2002) ("Under § 1983, there is no respondeat superior liability.").  But even if the court gives Swinney the benefit of the doubt and assumes that she only seeks to hold the City vicariously liable for Haynes' state-law torts, she cannot prevail.

The parties agree that for purposes of respondeat superior liability, the relevant question is whether Haynes was acting within the scope of his employment.  *See Duran v. Town of Cicero, Ill.*, --- F.3d ----, 2011 WL 3444353, at *4-5 (7th Cir. 2011) (noting that where plaintiffs brought an Illinois state-law tort claim under the doctrine of

respondeat superior, the defendant would be vicariously liable for the torts of its officers "if their actions were undertaken within the scope of their employment") (citation omitted); *Krause v. Turnberry Country Club*, 571 F. Supp. 2d 851, 864 (N.D. Ill. 2008). Although she makes absolutely no mention of the theory in her complaint,[5] Swinney argues in her response that the City had a policy of allowing police officers to give citizens rides home "under adverse circumstances,"[6] causing Haynes' sexual assault and other acts to fall within the scope of his employment. (*See* Pl.'s Resp. to City's Mot. for Summ. J. at 3-6, ECF No. 79.)

While "Illinois courts have consistently held that acts of sexual assault and misconduct are outside the scope of employment as a matter of law," *see Krause*, 571 F. Supp. 2d at 864, the court need not resolve that question here, because Haynes' conduct only fell within the scope of his employment if his conduct (1) was of the kind he was employed to perform, (2) occurred "substantially within the authorized time and space limits," (3) was "actuated, at least in part, by a purpose to serve the master," and (4) was not "unexpectable by the master." *Jones v. Patrick & Assocs. Detective Agency, Inc.*, 442 F.3d 533, 535 (7th Cir. 2006) (citing Restatement (Second) of Agency § 228); *see Nulle v. Krewer*, 872 N.E.2d 567, 569 & n.1 (Ill. App. Ct. 2007) (noting that the Illinois Supreme Court uses the Second Restatement's formula to determine whether an employee's acts are within the scope of employment). Swinney's failure to comply with

---

[5] To the extent that Swinney's response could be construed as an attempt to amend her complaint, "'[a] plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment.'" *Grayson v. O'Neill*, 308 F.3d 808, 817 (7th Cir. 2002) (quoting *Shanahan v. City of Chi.*, 82 F.3d 776, 781 (7th Cir. 1996)).

[6] The court briefly notes that even assuming a ride-giving policy had been in effect, the court has no concept of what Swinney means when she references "adverse circumstances." Perhaps it would become clear if the court scoured the entire record, but it is not this court's job to "sift through the record and make [a party's] case for him." *United States v. 5443 Suffield Terrace, Skokie, Ill.*, 607 F.3d 504, 510-11 (7th Cir. 2010).

the Local Rules is fatal to her claim. By ignoring the City's statement of facts, and by failing to put forth her own properly supported factual assertions in a statement that complies with Local Rule 56.1(b)(3)(C), Swinney has not established the existence of the ride-providing policy upon which she relies, much less that Haynes' conduct was of the kind he was employed to perform or that it was undertaken at least in part with the intent of serving his employer. In Illinois, the "scope of employment" inquiry is a question of fact, *see Lujano v. Town of Cicero*, 691 F. Supp. 2d 873, 889 (N.D. Ill. 2010), and where a plaintiff fails to establish one of the elements of her case and there is no factual dispute regarding that element, summary judgment in favor of the defendant is appropriate. *See Johnson*, 426 F.3d at 892.

**B. Section 1983 – Count V**

For the same reason Swinney's respondeat superior claim cannot succeed, so too does her § 1983 claim fall short. Here, Swinney takes aim at the City via a *Monell* claim, as one of the ways in which a municipality may be liable under § 1983 is when the plaintiff's constitutional injury is caused by "a widespread practice that is so permanent and well settled as to constitute a custom or usage with the force of law." *Wragg v. Vill. of Thornton*, 604 F.3d 464, 467-68 (7th Cir. 2010) (citing *Latuszkin v. City of Chi.,* 250 F.3d 502, 504 (7th Cir. 2001); *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Count V posits that Haynes violated Swinney's Fourth and Fourteenth Amendment rights pursuant to a "widespread practice" that was "so permanent and well settled as to constitute a custom or policy of the City of Waukegan." But again, the response (not the complaint) makes it clear that the "widespread practice" Swinney alleges is the policy of providing citizens with rides home. "Summary judgment is the 'put up or shut up'

9

moment in litigation," and Swinney had to provide at least some evidence upon which a reasonable jury could rely in finding in her favor. *Delapaz v. Richardson*, 634 F.3d 895, 900 (7th Cir. 2011) (quoting *Goodman v. National Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). Because Swinney has provided absolutely no evidence to support her claims against the City, summary judgment is warranted.

## IV. CONCLUSION

Because Swinney failed to set forth any disputed material facts that would preclude summary judgment, the claims against the City are dismissed.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: September 26, 2011